UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RAYMOND CONCEPCION, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | *   Civil Action No. 1:22-cv-11703-IT |
| | * |
| NELSON ALVES, et al., | * |
| | * |
| Respondents. | * |

MEMORANDUM & ORDER

May 24, 2024

TALWANI, D.J.

Petitioner Raymond Concepcion filed a Petition for Writ of Habeas Corpus ("Petition") [Doc. No. 1] pursuant to 28 U.S.C. § 2254 alleging that his sentence of life in prison with the possibility of parole violated the Eight Amendment's prohibition on cruel and unusual punishment because the sentencing court did not adequately consider his age or intellectual disability in sentencing. For the reasons set forth below, the Petition for Writ of Habeas Corpus [Doc. No. 1] is DENIED.

I. Background[1]

   A. The 2012 Incident and Arrest

In October 2012, an adult Mission Hill gang member told 15-year-old Raymond Concepcion to retrieve a gun Concepcion had purchased months earlier and ride in a Nissan

---

[1] Under 29 U.S.C. § 2254(e)(1), determinations of fact by the state court are presumed to be correct, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." See also Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001) ("A habeas petitioner can overcome such findings only by demonstrating that they were 'based on an unreasonable determination of the facts in light of the evidence presented.'" (quoting 28 U.S.C. § 2254(d)(2)). Accordingly, the facts recited here are based on the factual determinations

Maxima with two other adult members of the gang. Commonwealth v. Concepcion, 487 Mass. 77, 79 (2021). The two adults drove Concepcion to the victim, a former member of the same gang who was in his car, and ordered Concepcion to "get him." Id. at 79-80. Concepcion believed that he would be allowed to leave the gang without being harmed or killed (and without his family being harmed or killed) only if he shot the victim. Id. He fired four or five rounds into the victim's car. Id. at 80. Three bullets struck the victim, who did not survive. Id. Following the shooting, Concepcion returned to the Maxima, and he and the others fled the scene. Id. Police arrested Concepcion after a brief pursuit and Concepcion eventually confessed to shooting the victim. Id.

    B. *Concepcion's Indictment and Trial*

In December 2012, a grand jury indicted Concepcion for murder in the first degree, M.G.L. ch. 265, § 1, and carrying an unlicensed firearm, id. § 10(a). Id. Concepcion's case was transferred out of juvenile court pursuant to Section 74 of the Youthful Offender Act of 1996, M.G.L. ch. 119 ("§ 74").[2]

At trial in Superior Court, Concepcion did not deny shooting the victim, but argued that his age, previous trauma, and intellectual disability precluded him from forming the intent necessary to convict. Concepcion, 487 Mass. at 80. His mother testified that when Concepcion was around 8 years old, his father was shot multiple times while he watched. Id. at 80-81. Later, Concepcion also witnessed a violent robbery, saw his uncle accidentally shoot himself while

---

of the Massachusetts Supreme Judicial Court ("SJC") in Commonwealth v. Concepcion, 487 Mass. 77 (2021).

[2] Section 74 provides that "[t]he juvenile court shall not have jurisdiction over a person who had at the time of the offense attained the age of fourteen but not yet attained the age of 18 who is charged with committing murder in the first or second degree."

cleaning a firearm, and saw a police officer shoot his brother. Id. at 81. His father, uncle and brother all survived. Id.

Additionally, a clinician who was familiar with Concepcion through the Department of Youth Services detention center where Concepcion was held testified that Concepcion was emotionally immature, was prone to "temper tantrums," and was easily influenced by his peers and eager for their approval. Id. at 80. A psychologist who evaluated Concepcion further testified that he "had an intelligence quotient of sixty-six, a limited capacity for abstraction or problem-solving, and a limited capacity to form intent." Id. at 81. The psychologist testified that Concepcion suffered from a moderately severe global developmental delay, as well as post-traumatic stress disorder and persistent depressive disorder; that he had a history of traumatic brain injury and cognitive delay; and that because of those conditions and his previous experience with firearm violence, Concepcion lacked the ability to understand the full meaning of killing someone. Id.[3]

On March 16, 2016, the jury found Concepcion guilty of murder in the first degree based on extreme atrocity or cruelty and guilty of the unlawful firearm possession. Id.

Under M.G.L. ch. 265, § 2(b), because Concepcion was found to have committed first degree murder after his fourteenth birthday and before his eighteenth birthday, the Superior Court judge was required to impose a life sentence with the possibility of parole.

---

[3] The Commonwealth's psychological expert disagreed and testified that Concepcion's cognitive ability was average and that he had no psychological, cognitive, or emotional disorders that would impair his ability to form intent. Concepcion, 487 Mass. at 81. The Commonwealth conceded on appeal, however, that Concepcion "'had documented intellectual limitations.'" Id. at 81 n.9.

The judge sentenced Concepcion to life with the possibility of parole after 20 years for murder in the first degree based on extreme atrocity or cruelty and to a concurrent sentence of up to five years for the firearm violation. Concepcion, 487 Mass. at 81-82.

C. *Concepcion's Appeal and the SJC's Decision*

Concepcion timely appealed his conviction. Id. at 82. Concepcion argued, inter alia, that (1) the mandatory transfer scheme imposed by § 74 violates the Eighth Amendment by depriving sentencing authorities the opportunity to exercise discretion in considering Concepcion's youthfulness and intellectual disability; and (2) a life sentence with the possibility of parole is a disproportionate punishment under the Eighth Amendment where Concepcion is a juvenile offender who is intellectually disabled. Id. at 83-84.

The SJC found that neither § 74 nor the sentence imposed on Concepcion violated the Eighth Amendment. First, it concluded that § 74 "is a jurisdictional statute; it proscribes no punishments, requiring only that a juvenile charged with murder must be tried in the Superior Court." Id. at 84. Further, the SJC noted that the question of whether a sentencing court could exercise discretion at the transfer stage "overlooks the real issue: whether the underlying punishment that could be imposed once the juvenile is transferred to adult court survives constitutional scrutiny." Id. (citing Miller v. Alabama, 567 U.S. 460, 487-89 (2012)). "Consequently, if there is no disproportionality violation in the underlying punishment, then there is no violation in [§ 74]." Id.

Second, the SJC held that the sentence imposed on Concepcion survives constitutional scrutiny. Id. at 86-89. The SJC recognized that mandatory life without parole for juveniles violates the Eight Amendment and that, under federal law, an individualized, youth-specific hearing must be held prior to sentencing where a sentence is presumptively disproportionate. Id. at 84, 89 n.19 (citing Miller, 567 U.S. at 479). The SJC found further that Article 26 of the

Massachusetts Declaration of Rights provides defendants greater protection than the Eighth Amendment does. Id. at 86. The SJC noted that it had repeatedly held that mandatory life sentences with the possibility of parole after a term of fifteen years are proportional for juveniles convicted of murder in either the first or second degree, and that these sentences were consistent with Miller. Id. at 87 and n.13. After reviewing its precedents on the proportionality of life sentences for juvenile offenders, the SJC determined that, in Concepcion's case, "[a]lthough the defendant's age and mental impairments are factors that weigh in his favor, they do not alone tip the scales toward disproportionality." Id. at 88. The SJC concluded that a mandatory life sentence with the possibility of parole after twenty years "is not 'so lengthy that it could be seen as the functional equivalent of life without parole,'" and therefore did not offend Concepcion's Eighth Amendment rights as delineated by the Supreme Court. Id. at 89 (quoting Commonwealth v. Brown, 466 Mass. 676 (2013)).

After rejecting these constitutional arguments, the SJC nonetheless exercised its discretion to reduce the first-degree murder conviction "in exceptional and rare circumstances of duress" under Mass. G.L. ch. 278, § 33E, and remanded the case to the Superior Court to enter a verdict of guilty of murder in the second degree and for resentencing. Id. at 96.

On October 18, 2021, the Supreme Court denied Concepcion's petition for writ of certiorari. Concepcion v. Massachusetts, 142 S.Ct. 408 (2021) (No. 21-5498).

D. *Concepcion's Resentencing*

Under M.G.L. ch. 265, § 2(c), the superior court judge was required to impose a life sentence with the possibility of parole for the second degree murder charge. Pursuant to M.G.L. ch. 279, § 24, and ch. 119, § 72B, the judge was also required to impose a parole term of not more or less than 15 years.

On October 25, 2021, the Massachusetts Superior Court entered the second-degree murder verdict and resentenced Concepcion to life in prison with the possibility of parole after 15 years. Resp.'s Answer to the Pet.'s Pet. for a Writ of Habeas Corpus ¶ 2(a) [Doc. No. 22].

 E. *The Habeas Petition Under 28 U.S.C. § 2254*

Concepcion filed his <u>Petition</u> [Doc. No. 1] challenging his state conviction under 28 U.S.C. § 2254 on October 6, 2022. As in the state court, Concepcion contends (1) that the mandatory transfer scheme imposed by § 74 violates the Eighth Amendment by depriving sentencing authorities the opportunity to exercise discretion in considering Concepcion's youthfulness and intellectual disability; and (2) that a life sentence with the possibility of parole is a disproportionate punishment under the Eighth Amendment where Concepcion is a juvenile offender who is intellectually disabled.

**II.** **Discussion**

 A. *Standard of Review*

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a person in custody pursuant to the judgment of a state court must have "exhausted the remedies available in the courts of the State" prior to filing a petition for a writ of habeas corpus in the federal court. 28 U.S.C. § 2254(b)(1)(A). After exhausting state remedies, an application for a writ of habeas corpus brought by a state prisoner shall not be granted "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the adjudication of the claim resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court;" or (2) "was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[4]

A state court decision is "contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

A federal court may also grant the writ if the relevant state court decision "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court[.]" 28 U.S.C. § 2254(d)(1). A state court decision is an unreasonable application of clearly Supreme Court precedent when it "correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case[.]" White v. Woodall, 572 U.S. 415, 426 (2014) (citing Williams, 529 U.S. at 409). Importantly, a state court does not unreasonably apply clearly established Supreme Court law by simply refusing to extend it to a context in which the rule should have controlled. Id. at 425, 427. In other words, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 419-420 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011). "This is 'meant to be' a difficult standard to meet." Virginia v. LeBlanc, 582 U.S. 91, 94 (2017) (quoting Harrington, 562 U.S. at 102).

---

[4] Concepcion does not argue that the SJC decision was based on an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2).

B. *Exhaustion*

Respondents contend that Concepcion's claim that his sentence was disproportionate to his conviction is unexhausted.[5] Respondents argue that it is unclear whether Concepcion is challenging the proportionality of his initial sentence following the first-degree murder conviction, or his sentence after the verdict was reduced to second-degree murder. If the former, Respondents argue, that argument is now moot because the conviction has been vacated; if the latter, that claim is unexhausted because Concepcion never brought a disproportionality challenge in the state court to that sentence.

Concepcion responds that his proportionality challenge has always been to the life sentence portion of his sentence, not the time until the availability of parole, so the proportionality challenge has been exhausted in state court.

The court finds that Concepcion has exhausted his federal claim. As the SJC reported, "the defendant contends that the mandatory nature of the life sentence renders the punishment unconstitutional." Concepcion, 487 Mass. at 86. In raising this argument, Concepcion "fairly and recognizably presented to the state courts the factual and legal bases of [his] federal claim," Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997), and did so "'in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" Id. (quoting Scarpa v. Dubois, 38 F.3d 1, 6 (1st Cir. 1994)).

Nor did the remand to the Superior Court for entry of the second degree murder conviction and related sentence create a new obligation on Concepcion to exhaust state court remedies. The SJC's decision thoroughly discussed life sentences with the possibility of parole

---

[5] Respondents do not dispute that Concepcion's claim regarding § 74's mandatory jurisdictional transfer has been exhausted.

after 15 years, noting that "we repeatedly have held that mandatory life sentences with the possibility of parole after a term of years are proportional for juveniles convicted of murder in either the first or second degree." Concepcion, 487 Mass. at 87 (citing Commonwealth v. Lugo, 482 Mass. 94, 100 (2019) (upholding mandatory life sentence with possibility of parole after fifteen years for juvenile convicted of murder in second degree.)). Moreover, given the statutory framework detailed above, the SJC's remand required not only the imposition of a life sentence but also the exact term prior to consideration for parole entered by the Superior Court. In sum, the court finds Petitioner's claims fully exhausted.

    C. *Was the SJC's Decision Contrary to or an Unreasonable Application of Clearly Established Law*

As explained below, the court finds that the SJC's rejection of Concepcion's claims was neither contrary to nor an unreasonable application of clearly established federal law.

    1.  Section 74's Mandatory Jurisdictional Transfer

Concepcion contends that § 74 is unconstitutional because his youth and intellectual disability were ignored when he was mandatorily excluded from juvenile court and tried as an adult, and that the SJC's determination to the contrary involved an unreasonable application of Supreme Court precedent, namely Miller v. Alabama, 567 U.S. 460, 470 (2012).

Under § 74, children aged 14 and older charged with murder are automatically transferred to adult court rather than being tried in juvenile court. If they are convicted, the sentencing judge may not choose from a range of sentences permitted under M.G.L. ch. 119, § 58, and instead must impose a sentence of life with parole under M.G. L. ch. 265, § 2. Concepcion argues that § 74 "automatically subjected [him] to an adult trial and a mandatory life-with-parole sentence without regard to his unique characteristics." Pet.'s Mem. of Law ISO Pet. for Habeas Corpus ("Pet.'s Mem.") 11 [Doc. No. 10]. This, he argues, deprives the sentencing judge of the

9

opportunity to consider the individual characteristics of the alleged youth offender when determining a sentence as harsh as life imprisonment, and thus violates clearly established federal law as determined by the Supreme Court in Miller.

In Miller, two 14-year-old offenders were transferred from juvenile court and tried and sentenced as adults, pursuant to their respective state laws, to mandatory terms of life imprisonment *without* the possibility of parole. 567 U.S. at 465. The Court held that mandatory life-without-parole sentences for juveniles violated the Eighth Amendment because "the characteristics of youth, and the way they weaken rationales for punishment, can render a life-without-parole sentence disproportionate," and the mandatory sentencing scheme at issue in that case prevented the sentencer from considering a defendant's youth before sentencing them to life without parole. Id. at 470.[6]

What Miller does not proscribe, however, is where a juvenile defendant must be tried. Concepcion's contention that the mandatory transfer itself is a violation of the Eighth Amendment is thus not supported by Miller, and the SJC's holding that § 74 is "jurisdictional" did not contravene Miller. To the contrary, Miller supports the SJC's conclusion that "focusing on whether jurisdictional discretion was available at the transfer stage overlooks the real issue: whether the underlying punishment that could be imposed once the juvenile is transferred to adult court survives constitutional scrutiny." Concepcion, 487 Mass. at 84.

---

[6] The Court did not categorically foreclose life-without parole for juvenile offenders. Instead, the Court required that an offender's youth and attendant characteristics must be considered before a juvenile offender is sentenced to life imprisonment without the possibility of parole. Miller, 567 U.S. at 480.

2. Concepcion's Sentence

The remaining question is whether the SJC's conclusion that Concepcion's sentence did not violate the Eighth Amendment was an unreasonable application of Supreme Court precedent. Concepcion argues that it was unreasonable either because a mandatory sentencing scheme of life with parole for juveniles is unconstitutional on its face, or because life with parole was unconstitutional as applied to Concepcion's particular circumstances. The court finds the SJC's conclusion was not an unreasonable application of Supreme Court precedent.

a. Mandatory Life in Prison with the Possibility of Parole for Juvenile Offenders

Concepcion argues that the mandatory imposition of life in prison with the possibility of parole under M.G.L. ch. 265, § 2(b) for an intellectually disabled child is a violation of the Eight Amendment.

The Supreme Court has consistently held that children are different from adults for purposes of the most severe penalties because of juveniles' lessened culpability and greater capacity for change. See Miller, 567 U.S. at 465; Montgomery v. Louisiana, 577 U.S. 190, 207-208 (2016) (summarizing Miller); see also Roper v. Simmons, 543 U.S. 551 (2005) (holding Eighth Amendment bars death penalty for children); Graham v. Florida, 560 U.S. 48 (2010) (holding Eighth Amendment prohibits life sentences without the possibility of parole for children who commit nonhomicide offenses). "An offender's age is relevant to the Eighth Amendment," Graham, 560 U.S. at 76, and the distinctive attributes of youth diminish the justification for imposing the harshest sentences on juvenile offenders. Miller, 567 U.S. at 472.

Youth undoubtedly matters in sentencing, and "discretionary sentencing allows the sentencer to consider the defendant's youth." Jones v. Mississippi, 593 U.S. 98, 111 (2021). Nonetheless, Concepcion has not demonstrated that the SJC's adjudication of his claim involved an unreasonable application of clearly established Federal law, because Miller does not concern

11

sentencing schemes for juveniles that impose life sentences with the possibility of parole, only those that mandatorily impose life *without* the possibility of parole. Miller, 567 U.S. at 479. This is a distinction with a difference.

Importantly, Miller "does not categorically bar a penalty for a class of offenders or type of crime. . . . Instead, it mandates only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty." Miller, 567 U.S. at 483. The "particular penalty" specifically addressed in Miller was life imprisonment without the possibility of parole. See Atkins v. Crowell, 945 F.3d 476, 478 (6th Cir. 2019) (Miller "creates a legal rule about life-without-parole sentences").

Concepcion asks this court, and asked the SJC, to find that Miller's discretionary sentencing requirement covers additional penalties, including life imprisonment with the possibility of parole. The Miller Court, however, always included "without the possibility of parole" when it discussed the sentence at issue. As the Sixth Circuit noted, "Miller emphasized the 'without parole' component of its holding five times," Atkins, 945 F.3d at 479, (citing Miller, 567 U.S. at 465, 470, 477, 479, 489), and "[a] 'limitation thus emphasized is one the state courts may honor, with relatively little fear of being found "objectively unreasonable" for doing so.'" Id. (quoting Mendoza v. Berghuis, 544 F.3d 650, 655 (6th Cir. 2008)). Moreover, in considering Miller's retroactivity, the Supreme Court itself expressed that a "Miller violation" could be remedied by "permitting juvenile homicide offenders to be considered for parole[.]" Montgomery, 577 U.S. at 212.[7] In sum, the court finds the SJC's conclusion that there was no

---

[7] Concepcion also points to Atkins v. Virginia, 536 U.S. 304 (2002), where the Supreme Court found offenders with intellectual disabilities categorically ineligible for the death penalty. But the Supreme Court did not address in Atkins the constitutionality of life sentences for such individuals, let alone life sentences with parole.

categorical Eighth Amendment violation in a mandatory life with parole sentence for an intellectually disabled juvenile was not an unreasonable application of Supreme Court precedent.

> b.  Life in Prison with the Possibility of Parole as Applied to Concepcion

Concepcion also contends that the sentence imposed on him of life in prison with the possibility of parole was disproportionate under the Eighth Amendment as applied to him, where he is both a juvenile offender and intellectually disabled. He argues that "imposing a mandatory life sentence on [an] intellectually disabled child is cruel and unusual punishment in violation of the Eighth Amendment's prohibition against disproportionate punishment." Pet.'s Mem. 18 [Doc. No. 10]. By way of analogy, Concepcion notes that "an intellectually disabled juvenile should not be sentenced as harshly as other juveniles, just as a disabled adult is not subject to the same maximum punishment as other adults." Id. at 18-19.

Concepcion makes a series of arguments in support of his proportionality claim. First, he contends that "both juvenile and intellectually disabled defendants have diminished culpability," Id. at 19, and cites Supreme Court precedent focused on the constitutional bounds of sentencing certain classes of individual.

Second, Concepcion argues that it was proven at trial that he had intellectual disabilities. Had his offense taken place in a death-penalty state, Concepcion argues, the Eighth Amendment would have prevented the imposition of such a disproportionate punishment.

Finally, Concepcion argues that "because [he] was intellectually disabled and a child at the time of the offense," "his doubly diminished culpability warrants a lesser sentence than mandatory life imprisonment." Id. at 21. He also argues that the theoretical possibility of parole that accompanied his life sentence does not exempt the sentence from Eighth Amendment scrutiny.

The Supreme Court "relied entirely on the principle of proportionality when finding mandatory life-without-parole sentences for juveniles unconstitutional" in Montgomery and Miller. Ali, 950 F.3d at 575. Similarly, the Court has held that "because of their disabilities in areas of reasoning, judgment, and control of their impulses," intellectually disabled offenders "do not act with the level of moral culpability that characterizes the most serious adult criminal conduct," Atkins, 536 U.S. at 321, and, because of this, the death penalty is a disproportionate punishment.

Concepcion is correct that the proportionality inquiry animating the Court's juvenile and intellectual disability jurisprudence is not limited to capital cases or *de facto* life sentences. See e.g., McKinley v. Butler, 809 F.3d 908, 911 (7th Cir. 2016). He is also correct that parole eligibility does not guarantee a defendant's release from prison. See Graham, 560 U.S. at 75. Moreover, cases like Roper, Graham, Miller, and Atkins stand for the proposition that certain punishments are disproportionate when applied to juveniles or intellectually disabled individuals because the characteristics of both can render certain sentences disproportionate to the offense. Based on this, Concepcion invites this court to conclude that a life sentence with the possibility of parole is a disproportionate punishment under the Eighth Amendment for Concepcion, a juvenile offender who is intellectually disabled.

The Supreme Court in Miller arrived at its holding by merging two strands of precedent: (1) categorical bans on sentencing practices based on a mismatch between a defendant's culpability and the severity of the penalty; and (2) prohibitions on the mandatory imposition of capital punishment. Miller, 567 U.S. at 470. Concepcion proposes a similar merged approach: he highlights separate but related lines of jurisprudence governing the sentencing of juvenile and intellectually disabled offenders to support the conclusion that defendants who sit at the

14


intersection—i.e., who are both juvenile and intellectually disabled— have "doubly diminished culpability," thus warranting a lesser sentence than mandatory life imprisonment. Pet.'s Mem. 20-22 [Doc. No. 10].

However, when confronted with Concepcion's case, the SJC engaged in a straightforward application of Miller, which squarely holds only that a sentence of life without parole for juvenile offenders convicted of murder may be disproportionate under the Eight Amendment. Miller, 567 U.S. at 473. Miller, Montgomery, and Atkins—the cases on which Concepcion primarily relies—all confronted facts materially distinguishable from those here. In none of those cases was the defendant sentenced to life in prison with the possibility of parole; Miller and Montgomery involved mandatory life sentences without parole, and the defendant in Atkins had been sentenced to death. Accordingly, the proportionality considerations in those cases were different from those here, and the SJC was not *required* to arrive at the same result as these precedents. See Thaler v. Haynes, 559 U.S. 43, 49 (2010) (reviewing courts must be careful not to turn the Court's context-specific holdings into "blanket rule[s]"); Brown v. Ruane, 630 F.3d 62, 69 (1st Cir. 2011) (courts should "look for Supreme Court precedent that either 'squarely addresses the issue' in the case or that articulates legal principles that 'clearly extend' to the new factual context" (quoting Wright v. Van Patten, 552 U.S. 120, 123, 125 (2008)).

Finding for Concepcion would require the court to extend Miller and Atkins, and the Eighth Amendment disproportionate punishment reasoning underlying each. But the scope of review under AEDPA does not allow the court to do so. Based on this court's review of relevant Supreme Court precedent, the court cannot find that the SJC "applie[d] a rule that contradicts the governing law set forth [by the Supreme Court]." Williams, 529 U.S. at 405. Thus, the

adjudication of the claim did not result in a decision that was contrary to clearly established federal law as required for relief under 28 U.S.C. § 2254.

### III. Conclusion

For the foregoing reasons, Concepcion's Petition for Writ of Habeas Corpus [Doc. No. 1] is DENIED.

IT IS SO ORDERED

May 24, 2024                                            /s/Indira Talwani
                                                        United States District Judge